Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 1452 | **DATE** | 10/19/2000 |
| **CASE TITLE** | USA, ex rel., GARY DAVIS vs. RICHARD B. GRAMLEY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's habeas petition [1] is denied. Petitioner's motion for evidentiary hearing [19] is denied as moot. Petitioner's motion for status request [18] is administratively terminated as moot. This action is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 2 3 2000 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 00 OCT 23 AM 8:02 | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA *ex rel.*, | ) | |
|---|---|---|
| GARY DAVIS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 98 C 1452 |
| | ) | |
| RICHARD B. GRAMLEY, | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

State prisoner Gary Davis has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging eight grounds on which his conviction and sentence for first-degree murder are constitutionally infirm. Because the court finds that all of Davis's claims are procedurally defaulted, meritless or both, Davis's petition is denied.

## Background

Stemming from the 1991 shooting death of his brother, petitioner Davis was convicted of first-degree murder after a jury trial, and sentenced to a prison term of forty-five years. The evidence at trial established that at about 4:20 a.m. on December 26, 1991, Davis and his brother were arguing over the what the temperature in their house should be. When Davis's brother began dismantling the thermostat with a screwdriver, Davis retrieved a gun and shot him a total of 26 times, including 16 times to the face and head. Davis then called the police and informed them that he shot his brother. In a subsequent interview with an assistant state's attorney, Davis provided details of the events leading up to the shooting. At trial, Davis sought a second-degree murder conviction, arguing that he was provoked when his brother threatened him with the

screwdriver that he was using to dismantle the thermostat. The trial judge instructed the jury on the offense of second-degree murder based on the use of force in self-defense, but not based upon sudden and intense passion resulting from serious provocation. The jury found Davis guilty of first-degree murder.

Davis appealed his conviction and sentence to the Illinois Appellate Court, raising two claims: first, that he was denied due process where the trial court refused to instruct the jury on second-degree murder based on sudden and intense passion resulting from serious provocation; and second, that the prosecutor's improper comments and misstatements of the evidence during closing argument denied Davis his right to a fair trial. The Illinois Appellate Court affirmed Davis's conviction and sentence on August 1, 1995 in an eight-page order.

On September 19, 1995, Davis filed a petition for leave to appeal in the Illinois Supreme Court, raising the same two claims he raised in the Illinois Appellate Court. The Supreme Court summarily denied Davis's petition for leave to appeal on December 6, 1995.

On April 4, 1996, Davis filed a petition for post-conviction relief with the state circuit court, raising seven claims: 1) that he was denied a fair trial and impartial jury selection, and that the jury was given defective instructions; 2) ineffective assistance of counsel at trial and on appeal; 3) that he was denied a fair trial because of police officers' perjured testimony; 4) that he was denied a fair trial because of the prosecution's misconduct during trial; 5) that he was denied "proper discretion" by the court during the prosecution's closing and rebuttal arguments, and during sentencing; 6) that newly discovered evidence indicates that Davis was not found guilty beyond a reasonable doubt, and that he was denied a fair trial; 7) that he was not found guilty beyond a reasonable doubt of every material element of the crime charged. The circuit court

denied his petition on June 10, 1996.

Davis appealed from the denial of his post-conviction petition, and his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), on May 7, 1997. Davis filed a *pro se* response to the motion to withdraw, alleging that he was denied the effective assistance of counsel. On August 26, 1997, the Illinois Appellate Court granted counsel's motion to withdraw and found that Davis had failed to present properly any issue to the court for review. Davis filed a petition for leave to appeal with the Illinois Supreme Court, which was denied on February 4, 1998.

Through his petition for writ of habeas corpus, Davis raises eight claims before this court:

*Claim 1*: Davis claims ineffective assistance of pre-trial and trial counsel on the grounds that his counsel: 1) never filed any pretrial motions to suppress the indictment obtained by the perjured testimony of a detective before the grand jury or the seized weapon, but counsel argued these issues at trial; 2) failed to obtain and complete the investigation of the grand jury composition; 3) failed to obtain eyewitness statements and the police ballistics work sheet; 4) failed to object to biased jurors.

*Claim 2*: Davis claims that he was denied a fair and impartial jury "where a juror has been a 'victim of a violent crime,' or has been a 'victim of a violent crime' to the one that is at issue or at trial is presumed to be completely biased," and "where a juror was unlikely that he or she could be impartial during trial or deliberations is completely and presumptively biased." (Habeas Pet. at 6)

*Claim 3*: Davis claims that he was denied a fair trial where the prosecutor: 1) knowingly used perjured testimony to obtain his indictment; 2) knowingly withheld favorable exculpatory

3

evidence of the eyewitness statements and ballistics work sheet; 3) knowingly used and allowed perjured testimony to obtain his conviction; 4) knowingly used sympathetic prejudicial comments during closing and rebuttal arguments.

*Claim 4*: Davis claims ineffective assistance of appellate counsel on the grounds that his counsel failed to raise several issues on appeal, including prosecutorial misconduct, the denial of a fair and impartial jury, absence of proof of guilt beyond a reasonable doubt, and excessive sentence.

*Claim 5*: Davis claims that he was not proven guilty beyond a reasonable doubt.

*Claim 6*: Davis claims that his sentence constitutes cruel and unusual punishment.

*Claim 7*: Davis claims that he was unconstitutionally denied a post-conviction evidentiary hearing and counsel.

*Claim 8*: Davis claims that he was denied effective assistance of counsel on appeal from the denial of his post-conviction petition.

## Analysis

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. 104-132, 110 Stat. 1218 (1996), the court may not grant Davis's habeas petition unless he has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This rule "reduces friction between the state and federal court systems by avoiding the 'unseemliness' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional

violation in the first instance." *Id.* at 845 (internal brackets omitted).

To meet this "exhaustion" requirement, Davis "must have raised all of his claims during the course of the state proceedings, presenting each claim fully and fairly to the state courts." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (citing *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992)). Fair presentment requires Davis "to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* For a constitutional claim to be fairly presented, "both the operative facts and the 'controlling legal principles' must be submitted" for the court's review. *Id.*

Davis's sixth claim – alleging that his 45-year sentence constitutes cruel and unusual punishment – was never raised in the state courts. Accordingly, this court is barred from addressing it on habeas review. *See Lemons v. O'Sullivan*, 54 F.3d 357, 360 (7th Cir. 1995) ("A petitioner is barred, with prejudice, from raising a claim that could have been but was not presented to the state court and at the time of the federal court habeas review can no longer be presented to the state court.").

Davis's first, second, and fifth claims, as well as part of his third claim, are procedurally defaulted because he failed to raise the issues in his appeal from the denial of his post-conviction petition. The state courts must have "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Therefore, even assuming that Davis was justified in not raising these issues on direct appeal, he was required to raise them in his appeal of the post-conviction petition's denial, and further was required to seek discretionary review in the Illinois Supreme Court. *See id.*; *see also White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999), *cert. denied*, 120 S. Ct. 1004 (2000);

*Cruz v. Warden of Dwight Correctional Center*, 907 F.2d 665, 670 (7th Cir. 1990) (stating that while petitioner's claim could not have been raised on direct appeal, he was required to pursue state post-conviction remedies).

Davis's only written submission on appeal of his post-conviction petition's denial was his response to his counsel's motion to withdraw. In that response, he raised only one issue – arguing that he has received ineffective assistance of appellate counsel. Because the other issues raised in his post-conviction petition – ineffective assistance of pre-trial and trial counsel (second post-conviction claim; first habeas claim), denial of fair and impartial jury (first post-conviction claim; second habeas claim), failure to prove guilt beyond a reasonable doubt (seventh post-conviction claim; fifth habeas claim), and certain aspects of his prosecutorial misconduct claim (third and fourth post-conviction claims; third habeas claim) – were not raised on direct or post-conviction appeal, they are procedurally defaulted.

The state argues that Davis's fourth claim is procedurally defaulted because the Illinois Appellate Court resolved it based on an independent and adequate state ground. Davis raised his ineffective assistance of appellate counsel claim in his post-conviction petition. In his response to his counsel's motion to withdraw, Davis simply argued that his appellate counsel "was in fact ineffective in not raising the petitioner's constitutional issues that would guarantee or grant him a reversal of his conviction on his direct appeal." (Exh. G to Answer at 2) The appellate court found "no issues of arguable merit," and affirmed the trial court's judgment. (Exh. H to Answer at 2) Contrary to the state's characterization, the appellate court did not base its ruling on a state procedural rule, nor did the court make any mention of Davis's failure to set forth supporting facts. Given that Davis expressly relied on *Strickland v. Washington* in his appellate brief, and

that his counsel set forth some of the potential supporting arguments and facts in his motion to withdraw, the court's finding that the issues lacked merit may have been in reference to the issues' merit under *Strickland*'s constitutional standard. Under these circumstances, this court cannot find that the Illinois Appellate Court's judgment was based on an independent and adequate state ground.

This court may review the defaulted claims only if Davis's habeas petition "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure." *Rodriguez*, 193 F.3d at 917 (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). Absent this showing, "a defaulted claim is reviewable only if refusal to consider it would result in a 'fundamental miscarriage of justice,' that is, where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). This would require Davis "to show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also Buelow v. Dickey*, 847 F.2d 420, 427 (7th Cir. 1988) (holding that court "may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted"), *cert. denied*, 489 U.S. 1032 (1989).

Davis has not alleged cause for any of his defaulted claims. His attorney's withdrawal on appeal of his post-conviction petition – the stage at which he failed to preserve his claims – does not constitute cause. Actions by an attorney are not cause for a procedural default unless the actions constitute ineffective assistance of counsel. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991); *see also McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) ("In order for an appellate attorney's alleged ineffectiveness to qualify as cause to justify procedural default, the

defendant must show the appellate attorney's performance was deficient and the performance prejudiced him in the proceeding.") (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). There is no constitutional right to an attorney during post-conviction proceedings. *See Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) (recognizing that "[i]neffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation").

Because Davis does not allege cause for his claims' defaults, they are subject to the "miscarriage of justice" standard of review. Accordingly, Davis is precluded from raising any of the five claims now unless he can show that it is more likely than not that no reasonable trier of fact would have convicted him absent the alleged constitutional violations. None of the alleged constitutional violations set forth in Davis's defaulted claims suggest that an innocent man was convicted. Indeed, Davis himself does not suggest that an innocent man was convicted, as he does not appear to dispute the validity of his confession to the crime. On direct appeal, his focus was not on his innocence, but on his purported entitlement to a "serious provocation" jury instruction. The Illinois Appellate Court agreed with the trial court's conclusion that the circumstances of the murder did not allow for such an instruction under Illinois law; Davis does not challenge that ruling in his habeas petition.

Davis's fourth, seventh and eighth habeas claims are reviewable by this court because they were subject to one full round of state court review. Additionally, Davis has preserved one aspect of his third habeas claim by raising it on direct appeal. His argument that the prosecutor made unfair arguments in closing and rebuttal was rejected by the Illinois Appellate Court.

The fact that these claims are reviewable does not mean that the court's review will be *de novo*. As long as the Illinois Appellate Court employed the proper constitutional framework in

analyzing Davis's claim, this court will leave any reasonable determination reached by that court undisturbed. In *Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997), the Seventh Circuit rejected the notion that the recently amended § 2254 authorizes the issuance of a habeas writ whenever a court errs. While the federal courts must ensure that state courts adhere to the legal principles set forth by the United States Supreme Court, "when the dispute lies not in the meaning of the Constitution, but in its application to a particular set of facts . . . sec. 2254(d)(1) restricts the grant of collateral relief to cases in which the state's decision reflects 'an unreasonable application of' the law." *Id*. In other words, § 2254(d)(1) "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Id*. However, if a federal court, after carefully weighing the reasons underlying the state court's judgment, "is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." *Williams v. Taylor*, 120 S. Ct. 1495, 1511 (2000).

The reviewable portion of Davis's third habeas claim – his argument that the prosecutor used prejudicial comments during his closing and rebuttal arguments – was raised before the Illinois Appellate Court, but the court cannot determine whether Davis bases his habeas claim on the same facts as his claim on direct appeal. The habeas petition itself does not identify the facts giving rise to his claim. In an unidentified attachment to his habeas petition, Davis argues that the prosecutor's improper arguments consisted of: 1) "inflammatory remarks not pertaining to the evidence"; 2) "pleading to the jury sympathies"; and 3) "voicing their own personal opinion about the defendant['s] guilt." (Habeas Pet. Exh. at 20) Based on these descriptions, the court will presume that Davis intends to raise the same arguments he raised before the Illinois

9

Appellate Court.[1]

In determining whether the prosecutor's remarks deprived Davis of a fair trial, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Even an improper remark must be considered in light of the entire record, and, to give rise to a constitutional violation, must be "sufficiently outrageous to affect the outcome of the trial given the totality of the evidence." *Rodriguez*, 193 F.3d at 920.

On direct appeal, Davis challenged three categories of comments by the prosecutor. First, Davis argued that several comments "served to improperly demean the defense in the eyes of the jury." (Exh. B to Answer at 24) In his appellate brief, Davis cited several excerpts from the argument in which the prosecutor suggested that Davis's defense was ludicrous, and that the jury should not let Davis off easy (via a second-degree murder conviction) simply because he was having a bad day. For example, Davis cited the following comments by the prosecutor:

> This is not some kind of frenzied action because poor Gary Davis, a little stress in his life, was having a bad day and made an unreasonable decision. That is ludicrous. That borders on absurd.
>
> \*\*\*\*
>
> Gee, folks, my family does not appreciate me. We have had stress in our family. Feel sorry for me. Find me guilty only of second-degree murder. That is a win for him. I was just acting a little unreasonably. That is all. Cut me a break. That is ridiculous.

---

[1] Alternatively, if Davis intends to raise new allegations in his habeas petition, the court is procedurally barred from reviewing them because they were never presented to the state courts.

10

(*Id.* at 23)

The Illinois Appellate Court dismissed Davis's objection, ruling that "the prosecutor's argument – that the jury should not believe defendant – was a proper response to the closing argument of defendant's counsel that the jury must consider why defendant shot his brother 26 times." (Exh. A to Answer at 7) The court finds nothing improper or even inappropriate in the prosecutor's comments, much less a constitutional violation. For the same reason, the appellate court's ruling on this issue is entirely reasonable.

The second category of prosecutorial comments challenged by Davis concerns alleged misstatements of the evidence. Davis argues that the prosecutor misstated the evidence by suggesting that the victim was still dismantling the thermostat when Davis started shooting him. According to Davis, the evidence showed that the victim had turned away from the thermostat and toward Davis when the shooting began. As the appellate court sensibly recognized, the argument that the victim was still dismantling the thermostat when he was shot is not inconsistent with the evidence that he turned toward Davis as Davis approached with the gun. To suggest that the prosecutor's assertion is inconsistent with the evidence in any meaningful way demands an unreasonable and unhelpful level of precision from the prosecutor's chosen words; to suggest that the assertion rises to the level of prosecutorial misconduct demands an utter disregard of the governing legal principles.

Davis next complains that the prosecutor improperly argued that the screwdriver was "small." The appellate court observed that a detective and Davis himself described the screwdriver as small. This court notes further that the police report makes reference to a "small screwdriver." The fact that other witnesses did not also offer that description does not preclude

the prosecutor from relying on it.

Davis contends that the prosecutor improperly argued that Davis did not fear for his life after the first shot "because he was not even sure that he even saw that screwdriver," but that he only "felt it." (Exh. B to Answer at 26) The appellate court found that Davis "had testified that he 'felt' his brother had a screwdriver but was not sure," and that the prosecutor's inference was therefore proper. (Exh. A to Answer at 7) The appellate court's conclusion was entirely reasonable.

Davis contends that the prosecutor improperly argued that Davis was "trying to fool you like he tried to fool 911, like he has tried to fool people his whole life." (Exh. B to Answer at 27) The appellate court noted that "[t]he trial judge specifically commented on the callousness of defendant's tone of voice during his call to police," but that the court was "unable to comment on defendant's demeanor when he called police" because the 911 tape was not made part of the record. (Exh. A to Answer at 8) The appellate court also ruled that "the argument that he had been 'fooling' people his whole life did not imply that he had a criminal history that had gone unpunished." (*Id.*) Again, this court is unable to discern a basis on which to find that the appellate court's ruling was misguided in any way, much less that it constituted an error actionable on habeas review.

Two of Davis's challenges were not expressly addressed by the appellate court. Davis contends that the prosecutor erred by arguing that Davis "never told you that the victim was 'charging' him," but that only his attorney had portrayed the victim as having "charged" Davis. (Exh. B to Answer at 27) Davis also alleges that the prosecutor's characterization of the victim as having "calmly explained to the defendant that the temperature in the house was okay"

12

contradicted the evidence because a witness testified that the defendant and victim were arguing. (*Id.* at 25) These challenges may have been encompassed by the court's finding that Davis waived many of his arguments by not objecting to the comments at the time they were made. Even assuming that the objections are properly before this court, the court does not possess the factual information necessary to determine whether the prosecutor's "calmly" characterization was supported by the record, or whether Davis actually testified that the victim "charged" him. In any event, the prosecutors' characterizations cannot be said to have so tainted Davis's trial as to have deprived him of due process. Given the undisputed evidence that Davis shot his brother – who was armed with, at most, a screwdriver – twenty-six times, he is hard-pressed to argue that the jury's verdict was based on one false word in the prosecutor's characterization of the victim's demeanor, or on the defendant's failure to use the same descriptive word used by his counsel. Moreover, if the evidence presented to the jury did not support the prosecutor's characterization, the prosecutor would have damaged his own credibility, as the jury was undoubtedly instructed to rely on the actual evidence, rather than the attorneys' arguments.

The third category of comments challenged by Davis on direct appeal are the prosecutor's "appeal[s] to the sympathies of the jury" (*Id.* at 28), expressions of the "prosecutors' personal beliefs or their feelings regarding the jury's beliefs about the facts of the case" (*Id.* at 29), and the prosecutor's "cheerleader-pep rally - type form of delivery." (*Id.* at 30) The appellate court observed that "[t]rying to secure a conviction . . . is not error," and that "[a] prosecutor is allowed great latitude in making closing argument." (Exh. A to Answer at 8) After noting that Davis had failed to object to the prosecutor's expression of his personal beliefs, the court ruled that none of the comments required reversal. This court agrees. The prosecutor told the jury that it would

have the opportunity to look at the autopsy photos showing the "gruesome results of how somebody looks when they are shot 26 times at close range with a nine millimeter and 16 times in the head and face area." (Exh. B to Answer at 29) The court perceives nothing remotely objectionable about this characterization of the evidence.

The prosecutor expressed his personal beliefs by arguing that:

> I come from a family of seven brothers and sisters, and we would fight, sometimes over serious issues, sometimes over what TV program to watch or even the temperature in the house, but it never occurred to me to take a nine millimeter and shoot one of my brothers and sisters 26 times to resolve minor differences.

(*Id.*)

The "cheerleader" form of delivery alluded to by Davis consists of the following argument:

> Who on this jury would pick up a fully loaded nine-millimeter semiautomatic weapon . . . None of you. Who would? A murderer. Who is the murderer in this courtroom? The defendant, Gary Davis. What is he a murderer of? What is he guilty of? First-degree murder.

(*Id.* at 30)

The above excerpts constitute forceful advocacy, but the prosecutor did not personally vouch for the defendant's guilt. Davis has offered no reason why such appeals to the jury's sense of right and wrong are improper, much less why the state courts' allowance of them is an error of constitutional magnitude. The court finds that the portions of Davis's third habeas claim that are not procedurally defaulted are without merit.

In Davis's fourth habeas claim, he argues that his appellate counsel rendered constitutionally ineffective assistance by failing to raise five issues: 1) the prosecution's knowing use of perjured testimony; 2) the denial of Davis's right to a fair and impartial jury; 3)

14

the prosecution's withholding of eyewitness statements and the police ballistics worksheet; 4) failure to prove guilt beyond a reasonable doubt; and 5) excessive sentence constituting cruel and unusual punishment.

The performance of appellate counsel is assessed under the same standards applied to trial counsel. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). To prevail on an ineffective assistance claim, Davis must establish two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding], a [proceeding] whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. Further, the Supreme Court has warned that "[j]udicial scrutiny of counsel's performance must be highly deferential," given that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

Davis's ineffective assistance claim fails both of the *Strickland* requirements. Under the first prong, none of the "errors" set forth in Davis's habeas petition evidence a constitutionally deficient performance by his appellate counsel. "Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course." *Mason*, 97 F.3d at 893. This court will not second-guess strategic decisions that were "arguably appropriate at the time, but, with the benefit of 'hindsight,' appear[] less than brilliant." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). After all, one of appellate counsel's primary

functions "is winnowing the potential claims so that the court may focus on those with the best prospects." *Id.* (quoting *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)). The appellate counsel's performance will be deemed constitutionally deficient only when she has omitted "a significant and obvious issue," and the ineffective assistance will be deemed prejudicial when that omitted issue "may have resulted in a reversal of the conviction, or an order for a new trial." *Id.* (quoting *Gray*, 800 F.2d at 646). The ultimate question is whether there is a reasonable probability that the outcome of the proceeding would have been different if not for the counsel's errors. *See id.*

Davis has not shown that any of the omitted issues are meritorious, much less that they would have changed the outcome of his appeal. The first omitted issue – the prosecutor's knowing use of perjured testimony – is based on Davis's belief that a detective perjured himself by testifying that the victim was unarmed and was shot while dismantling the thermostat. Apparently, Davis considers the testimony to be false because the victim was "armed" with the screwdriver he was using to dismantle the thermostat, and because the victim turned away from the thermostat toward Davis when Davis shot him. Not only does this argument lack merit, but Davis's appellate counsel undoubtedly would have risked sanctions by raising it before the Illinois Appellate Court. The other examples of perjury cited by Davis are simply purported inconsistencies between a witness's testimony and other evidence. Many of the examples are indecipherable, and the others simply suggest items that could, at most, have been the proper subject of cross-examination. There is no indication that any of the testimony amounts to perjury, much less that the prosecutor knew it to be perjury when it was presented before the grand jury or at trial.

The second omitted issue – the denial of Davis's right to a fair and impartial jury – is based on Davis's belief that six of the jurors were not qualified to serve. In an unidentified attachment to his post-conviction petition, he raises various criticisms of six jurors' backgrounds. The criticisms range from alleged bias because certain jurors were victims of crime or because they had been previously arrested, to an alleged lack of qualifications due to poor eyesight or an inability to stay awake during trial. Davis has not alleged that the trial judge failed to account for these factors during jury selection, nor has he provided any reason to second-guess his appellate counsel's conclusion that the jurors' individual traits were not fertile grounds for reversal.

The third omitted issue – the prosecution's knowing withholding of exculpatory evidence – is based on Davis's belief that he was entitled to certain unspecified witness statements and the police ballistics worksheet. To establish a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), evidence suppressed by the prosecution "must be both favorable to the accused and material." *People v. Hobley*, 696 N.E.2d 313, 328 (Ill. 1998). Favorable evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.*

Even accepting at face value Davis's conclusory and unsupported assertion that the prosecution improperly withheld certain eyewitness statements and ballistics worksheets, he has failed to establish a *Brady* violation. First, he does not even allege that the evidence was favorable to him, only that it might have been useful to the defense's cross-examinations of the witnesses and ballistics expert. He makes no representations as to what the evidence would have revealed. Second, even if the evidence was favorable to him, the court does not see how it would have changed the outcome of the proceedings, especially given Davis's admission to shooting his

17

brother twenty-six times. His appellate counsel's decision not to pursue this argument on appeal was not unreasonable, much less constitutionally ineffective.

The fourth omitted issue is the prosecution's alleged failure to prove Davis guilty beyond a reasonable doubt. In light of the evidence recounted above, this argument does not even merit a cursory discussion. Plainly, the appellate counsel would have risked sanctions if he had argued that Davis was not proved guilty beyond a reasonable doubt. The fifth omitted issue – Davis's insistence that his sentence is excessive and constitutes cruel and unusual punishment – is similarly frivolous. A forty-five year sentence for first-degree murder is neither excessive, nor cruel and unusual, and the appellate counsel would have been hard-pressed to insist to the contrary.

The two issues that Davis's counsel did choose to raise on appeal – that Davis was entitled to a "serious provocation" second-degree murder instruction, and that the prosecutor made improper comments during argument – were more compelling than the issues left unpursued. Further, the court has reviewed Davis's appellate brief, and finds it to be an example of well-written and forceful advocacy; it far exceeds the minimum level of effectiveness required by the Constitution. Because Davis cannot show that his appellate counsel's representation was constitutionally ineffective or that any alleged deficiency caused him prejudice, his fourth habeas claim fails.

In his seventh habeas claim, Davis argues that he was denied due process because he was not given an evidentiary hearing or a "counselor" during his post-conviction proceedings. This claim is a non-starter on habeas, as state collateral relief is not a federal constitutional right. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("No constitutional provision or

federal law entitles [the habeas petitioner] to any state collateral review."). Consequently, the state court's decisions not to hold an evidentiary hearing or provide Davis with counsel are not actionable on habeas review. *See id.* ("Unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause . . . errors in state collateral review cannot form the basis for federal habeas corpus relief."). Given that Davis does not claim that the state procedural rule was applied inconsistently in his case, this claim does not implicate a federal right.

In his eighth habeas claim, Davis argues that his right to effective assistance of counsel on the appeal of his post-conviction petition was violated. Because Davis has no constitutional right to counsel during post-conviction proceedings, *see Finley*, 481 U.S. at 555, this claim is denied.

## Conclusion

For the above reasons, Davis's habeas petition is denied. His motion for an evidentiary hearing is denied as moot. This action is dismissed.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: October 19, 2000