# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*, ) <br> GARY DAVIS, ) <br> Plaintiff, ) <br> v. ) <br> ) <br> RICHARD B. GRAMLEY, ) <br> ) <br> Defendant. ) | Case No. 98 C 1452 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

On March 6, 1998, state prisoner Gary Davis filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging eight grounds on which his conviction and sentence for first-degree murder were constitutionally infirm. On October 19, 2000, this court dismissed his claims as procedurally defaulted, meritless, or both. In so holding, the court found that some of petitioner's claims had been defaulted because they had not been presented to the Illinois appellate court in petitioner's *pro se* brief in response to state post-conviction appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Then, on November 15, 2000, the court *sua sponte* reconsidered its decision in light of the Seventh Circuit's opinion in *Wilkinson v. Cowan*, 231 F.3d 347 (7th Cir. 2000). Under *Wilkinson*, because the state appellate court must review all claims on the merits in deciding an attorney's motion to withdraw, Davis's claims I, II, V and part of III were properly presented and were not procedurally defaulted. After this reconsideration, the court ordered respondent to file a supplemental answer. Having now reviewed Davis's original petition, as well as respondent's supplemental answer, the court denies the remaining claims in the petition.

## Background

Stemming from the 1991 shooting death of his brother, petitioner Davis was convicted of first-degree murder after a jury trial and sentenced to a prison term of forty-five years. The evidence at trial established that at about 4:20 a.m. on December 26, 1991, Davis and his brother were arguing over what the temperature in their house should be. When Davis's brother began dismantling the thermostat with a screwdriver, Davis retrieved a gun and shot him a total of 26 times, including 16 times to the face and head. Davis then called the police and informed them that he shot his brother. In a subsequent interview with an assistant state's attorney, Davis provided details of the events leading up to the shooting. At trial, Davis sought a second-degree murder conviction, arguing that he was provoked when his brother threatened him with the screwdriver that he was using to dismantle the thermostat. The trial judge instructed the jury on the offense of second-degree murder based on the use of force in self-defense, but not based upon sudden and intense passion resulting from serious provocation. The jury found Davis guilty of first-degree murder.

Davis appealed his conviction and sentence to the Illinois appellate court, raising two claims: first, that he was denied due process when the trial court refused to instruct the jury on second-degree murder based on sudden and intense passion resulting from serious provocation; and second, that the prosecutor's improper comments and misstatements of the evidence during closing argument denied Davis his right to a fair trial. The Illinois appellate court affirmed Davis's conviction and sentence on August 1, 1995.

On September 19, 1995, Davis filed a petition for leave to appeal in the Illinois Supreme Court, raising the same two claims he raised in the Illinois appellate court. The Illinois Supreme Court summarily denied Davis's petition for leave to appeal on December 6, 1995.

On April 4, 1996, Davis filed a petition for post-conviction relief with the state circuit court, raising seven claims: 1) he was denied a fair trial and impartial jury selection, and the jury was given defective instructions; 2) he received ineffective assistance of counsel at trial and on appeal; 3) he was denied a fair trial because of police officers' perjured testimony; 4) he was denied a fair trial because of the prosecution's misconduct during trial; 5) he was denied "proper discretion" by the court during the prosecution's closing and rebuttal arguments, and during sentencing; 6) newly discovered evidence indicates that Davis was not found guilty beyond a reasonable doubt, and he was denied a fair trial; and 7) he was not found guilty beyond a reasonable doubt of every material element of the crime charged. The circuit court denied his petition on June 10, 1996.

Davis appealed from the denial of his post-conviction petition, and his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), on May 7, 1997. Davis filed a *pro se* response to the motion to withdraw, alleging that he was denied the effective assistance of counsel. On August 26, 1997, the Illinois appellate court granted counsel's motion to withdraw and found that Davis had failed to present properly any issue to the court for review. Davis filed a petition for leave to appeal with the Illinois Supreme Court, which was denied on February 4, 1998.

Following its reconsideration of the procedural default issue, the court must now resolve the following claims: (I) petitioner was denied the effective assistance of trial counsel; (II) petitioner was denied a fair and impartial jury; (III) petitioner was denied due process at trial when the prosecutors allegedly knowingly used perjured testimony before the grand jury and at trial, and knowingly withheld exculpatory evidence; and (V) petitioner was not proven guilty beyond a reasonable doubt.

3

**Analysis**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside the boundaries of permissible differences of opinion").

**Claim I**

In Claim I, petitioner claims that he was denied the effective assistance of trial counsel[1] because counsel did not file pretrial motions to suppress the indictment based upon the allegedly perjured testimony of Officer Edmund Leracz. The court dealt with this issue in its earlier opinion when dealing with petitioner's argument that his *appellate counsel* was ineffective for failing to

---

[1] In order to establish the ineffective assistance of counsel, one must establish both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

argue on appeal that the prosecution knowingly used perjured testimony. In its original opinion, the court found that there was no deficient performance because there was no perjury. As the court stated,

> The first omitted issue – the prosecutor's knowing use of perjured testimony – is based on Davis's belief that a detective perjured himself by testifying that the victim was unarmed and was shot while dismantling the thermostat. Apparently, Davis considers the testimony to be false because the victim was "armed" with the screwdriver he was using to dismantle the thermostat, and because the victim turned away from the thermostat toward Davis when Davis shot him. Not only does this argument lack merit, but Davis's appellate counsel undoubtedly would have risked sanctions by raising it before the Illinois Appellate Court.

10/22/01 Opinion. As before, the court cannot conclude that the detective perjured himself because he did not consider the victim "armed" (despite the fact that he had a small screwdriver) or because the victim was not actually working on the thermostat when he was shot (he was turning away from the thermostat). Because the detective did not perjure himself, Davis cannot make out a claim that his trial counsel was ineffective for moving to suppress the indictment based on the detective's testimony. Further, the Illinois state court's conclusion that Davis failed to show prejudice was entirely reasonable. Had Davis's appellate counsel moved to suppress the indictment based on the detective's testimony, there is no reason to believe that the outcome of the trial would have been different.

Davis also argues that his trial counsel was ineffective because he did not investigate the composition of the grand jury which indicted Davis. First, as the respondent correctly pointed out, Davis fails to put forward any factual support for his claim that his trial counsel did not check the composition of the grand jury. Further, even if he could show that his counsel failed to investigate the grand jury and that such inaction was deficient, Davis has failed to show that there is a substantial probability that the outcome would have been different had counsel undertaken an

investigation. *Strickland*, 466 U.S. at 687-88. Davis presents no evidence whatsoever concerning the makeup of the grand jury. Without some evidence suggesting that the grand jury's composition was problematic or inadequate, Davis fails to establish prejudice on this claim. Thus, the state court's finding of a lack of prejudice was reasonable.

Next, Davis argues that his trial counsel was ineffective because counsel did not obtain the statements of the eyewitness (the victim's girlfriend) and did not obtain the police ballistics worksheet. The court addressed a similar claim when it originally ruled on Davis's claim that he was denied his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), because the state failed to turn over the eyewitness statements and police ballistics worksheet to the defense. In so ruling, this court found that Davis failed to establish a *Brady* violation because there was no indication that the evidence would have been favorable to him, nor could the court conclude that the evidence (even if favorable) could have changed the outcome of the trial, given the facts surrounding the shooting and Davis's admission to shooting his brother twenty-six times. Here, Davis similarly fails to put forward any evidence that the statement and worksheet would have been favorable to him. And, as the state court reasonably held, Davis has failed to show a reasonable probability that the outcome would have been different had his lawyer obtained the statement and worksheet. Without this, he cannot show that he was prejudiced by his counsel's alleged failures.

Davis also asserts that his trial counsel was ineffective for failing to move to suppress weapons seized from his and the victim's home. This undeveloped claim does not even merit much discussion. Davis presents no grounds upon which the weapons could have been suppressed. The court cannot conclude that counsel's performance with respect to the weapons was deficient. Nor can the court conclude that the state court's ruling that Davis failed to show prejudice was

6

unreasonable. There is nothing in the record or Davis's submissions to suggest that such a motion would have changed the outcome of the trial.

Finally, Davis claims that his trial counsel was ineffective because he did not object to certain allegedly biased persons who sat on the jury. While not entirely clear, it appears that Davis is arguing that where a juror is the victim of a violent crime the court must "presume" that the juror is "completely biased." Also, he states that "where a juror was unlikely that he or she could be impartial during trial," that juror is also biased.

The Sixth Amendment guarantees a criminal defendant a trial by an impartial jury, which binds the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968). Here, Davis's assertion that certain jurors' backgrounds would cause them to be unfair is purely speculative. *See e.g., Whitehead v. Cowan*, 263 F.3d 708, 721-22 (7th Cir. 2001) (rejecting a habeas claim based on petitioner's speculation that jury was prejudiced against him). As the Seventh Circuit stated in *Whitehead*, the due process concern with a fair and impartial jury is safeguarded by voir dire and judicial control. 263 F.3d at 722. As this court noted in its original order, Davis failed to allege that any potential bias was not addressed by the trial judge, nor has he provided any reason to second-guess his trial counsel's conclusion that the jurors' individual traits did not suggest bias. Despite Davis's argument to the contrary, there is no *per se* rule that a juror who has been a victim of a crime is presumed to be biased. Rather, in order for the court to find implied bias, a juror must have been the victim of a crime similar to the one at issue in the trial. *Hunley v. Godinez*, 975 F.2d 316, 319 (7th Cir. 1992); *Burton*, 948 F.2d at 1159 (a juror, sitting in a murder trial where the defendant's defense was battered wife syndrome, was presumed to be biased because juror herself was involved in an abusive family situation at the time of trial). "Use

7

of the 'implied bias' doctrine is certainly the rare exception." *Id.* Davis has not pointed to any juror who fits this category. And with respect to Davis's claim that a juror stated that it was unlikely that she could be impartial during trial, the court's own review of the voir dire questioning found no factual support for this assertion. In the end, the court concludes that the state court was reasonable in finding that Davis could not have been prejudiced by his counsel's failure to object to certain jurors.

**Claim II**

In claim II, Davis argues that he was denied due process and a fair trial when certain allegedly biased persons sat on the jury which convicted him.[2] Claim II fails for the same reasons detailed above in claim I. Davis has failed to point to any juror for whom the court may presume bias.

**Claim III**

In his third claim, Davis argues that he was denied a fair trial because the prosecutors knowingly used perjured testimony and failed to turn over eyewitness statements and the police ballistics report. As discussed more fully in the court's original order and above, Davis has failed to convince this court that any of the witnesses perjured themselves. Likewise, he has failed to show that the eyewitness statements and police ballistics reports were favorable to him, let alone that they would have had an impact on the outcome of the trial.

**Claim V**

---

[2] While the Illinois state court, in ruling on Davis's post-conviction petition, did make some sweeping statements about all of Davis's claims, the court does not read the state court's opinion as addressing claims II, III and V on the merits. Therefore, under 28 U.S.C. § 2243, the court must apply the less deferential "as law and justice require" standard. *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005).

8

Davis's final claim is that he was not proven guilty beyond a reasonable doubt. The standard to be applied on habeas review in assessing the sufficiency of evidence for a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This is not a close call – the court has little trouble concluding that a rational trier of fact could have found Davis guilty of first-degree murder beyond a reasonable doubt. After having reviewed the evidence elicited at trial, the court is convinced that there was more than sufficient evidence to sustain the jury's guilty verdict. While Davis argued that he killed his brother in self-defense, this argument is severely undercut by Davis's own testimony that he could not recall if the victim was coming after Davis with the screwdriver. In addition, the victim's girlfriend testified that the victim never threatened Davis. Further, the manner in which Davis shot his brother – 26 times, including 16 times in the head and neck, after having reloaded his gun with an extra ammunition clip– belies his claim of self-defense. In light of this evidence, a rational trier of fact could certainly have found Davis guilty of first-degree murder beyond a reasonable doubt.

**<u>Conclusion</u>**

For the above reasons, all of the remaining claims in Davis's habeas petition are denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 26, 2008